Entered on Docket
November 02, 2007
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed: November 02, 2007

_____
EDWARD D. JELLEN
U.S. Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

RICHARD A. SWAIN,

                Debtor.    /

SARAH ALAM,

                Plaintiff,

vs.

RICHARD A. SWAIN,

                Defendant.   /

Case No. 05-48372 EDJ
Adv. No. 06-4043 AJ

## DECISION

By this adversary proceeding, plaintiff Sarah Alam ("Alam") seeks to render a debt she is owed by Richard A. Swain, the above debtor ("Swain"), nondischargeable pursuant to Bankruptcy Code § 523(a)(2)(A)[1] and (B).[2] The court will enter judgment in favor of

---

[1]Bankruptcy Code § 523(a)(2)(A) provides as follows:
A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt - (2) for money, property, services, or an extension, renewal, or refinancing of
(continued...)

Decision

Swain.

   A. <u>Facts</u>

The evidence Alam presented at trial was in large part different than the allegations of her complaint. The complaint alleges that Swain misrepresented himself to Alam as a different person, Richard F. Swain, and used this false identity to induce her to extend credit. The complaint also alleges that Swain was a "consummate con artist" that preyed on young females by inducing them to lend him money to payoff prior victims that had threatened Swain with lawsuits. Alam, however, presented no admissible evidence to support these allegations.

What the evidence did show was that, at the time of the acts complained of, Swain was a licensed flooring contractor. He met Alam in 2003. After the two of them dated for several months, Swain moved in with Alam. Thereafter, Alam lent Swain substantial sums of money, and essentially supported him by providing him with a rent-free place to live, food, use of her credit card, and many gifts.

During the period Swain lived with Alam, Alam introduced Swain to her sister, Jawadia Alam ("Jawadia"), who was in need of some

---

[1](...continued)
credit, to the extent obtained by - (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

[2]At trial Alam abandoned her claim for relief under Bankruptcy Code § 523(a)(2)(B) (obtaining credit by a false statement in writing respecting the financial condition of the debtor or an insider).

Decision                    2

remodeling work at her home.  Swain attempted to do the work.
Unfortunately for Jawadia, who is not a party to this action, Swain
botched the job.  Swain performed work that he was not licensed to
perform, and hired subcontractors that were not licensed.  Many of
the materials that Swain purchased for the job were paid for by
Alam.

Alam was aware during the period that she was lending money to
Swain that Swain did not have the ability to repay any of the loans.
Alam testified that by December of 2003, she had no confidence that
Swain would ever be able to repay her anything.  To induce Alam to
continue lending him money, Swain told her that Burton Milburn
("Milburn"), who had initially recommended Swain to Alam, would
guaranty his debts to her.  That month, Milburn came to Alam's home
and signed a document he tore out of a legal form book headed
"Specific Guaranty."  In reliance on the Specific Guaranty, Alam
continued to lend money to Swain.

Alam testified at trial that she lent Swain some $49,000 over
the course of their relationship, and that she lent approximately
two-thirds of that amount after Milburn had provided her with the
Specific Guaranty.

Swain eventually moved out, owing Alam substantial sums.  He
filed his voluntary chapter 7 petition on October 14, 2005.  Alam
sued Milburn on the Specific Guaranty, and for reasons hereinafter
mentioned, settled her lawsuit against Milburn for the sum of
$15,000.

/////

B. <u>Discussion</u>

To prevail under Bankruptcy Code § 523(a)(2)(A), a creditor must establish that: (1) the debtor made a representation, (2) with knowledge of its falsity, (3) with the intention and purpose of deceiving the creditor, (4) that the creditor justifiably relied on the representation, and (5) that the creditor sustained damage as the proximate result thereof. <u>In re Kirsh</u>, 973 F.2d 1454, 1457 (9th Cir. 1992); <u>In re Britton</u>, 950 F.2d 602, 604 (9th Cir. 1991). The creditor must establish each of these elements by a preponderance of the evidence. <u>Grogan v. Garner</u>, 498 U.S. 279, 111 S.Ct. 654 (1991).

At trial, Alam presented two theories why Swain's debt to her should be nondischargeable under Bankruptcy Code § 523(a)(2)(A). First, Alam contends that Swain defrauded her by providing her with the Specific Guaranty knowing that it was invalid. Second, Alam contends that she extended credit to Swain in reliance on his misrepresentation or false pretense that he was a general contractor. Both theories fail.

1. <u>The Specific Guaranty</u>

Alam bases her contention concerning the Specific Guaranty on the facts that the word "Witness," appears below Milburn's signature on the Specific Guaranty, and that after she sued Milburn, Milburn claimed that he did not sign the Specific Guaranty as a guarantor, but only as a witness.

This argument fails for numerous reasons. First, the argument assumes that the Specific Guaranty was not effective as Milburn's guaranty, even thought this assumption is not necessarily a correct

Decision 4

one. The Specific Guaranty reads, in relevant part:

> [A]s an inducement for Sarah Alam . . . Creditor) to extend credit to Richard Swain . . . (Borrower); the undersigned jointly, severally and unconditionally guarantee to Creditor the prompt and full payment of the following obligation: Any money borrowed by Richard Swain. . . . In the event of default, the Creditor may seek payment directly from the undersigned without need to proceed first against the Borrower, and the undersigned waive all suretyship defenses. . . .

The Specific Guaranty was signed by Alam, Swain, and Milburn. The printed word "Creditor" appears below Alam's signature; the printed word "Borrower" appears below Swain's signature; the printed word "Witness" appears below Milburn's signature. There is no signature line on the form bearing the printed word "Guarantor."

But who, other than Milburn, could have been the "undersigned" against whom Alam could "seek payment directly without need to proceed first against the Borrower"? The answer, clearly, is no one: the Specific Guaranty makes no sense and could have no purpose unless it is Milburn's guaranty of Swain's debt to Alam. And this is so notwithstanding the printed word "Witness" below Milburn's name.

The court before which Alam's lawsuit against Milburn was pending made no finding as to effectiveness of the Specific Guaranty because, as previously mentioned, Alam elected to settle.

If the Specific Guaranty had been found to have been valid, however, it would follow that Swain made no misrepresentation to Alam concerning its legal effect.

But even if the Specific Guaranty might have been found to have been invalid, Alam would still not prevail herein as to this claim.

Decision 5

Alam presented absolutely no evidence to this court that would suggest that Swain had any knowledge as to the invalidity of the Specific Guaranty.  Nor did Alam present any evidence showing that Swain had any knowledge at the time Milburn signed the Specific Guaranty that Milburn would later disclaim liability thereunder.

Morever, the Specific Guaranty was taken from a legal form book, and thus was not a document that Swain designed for purpose of deceiving Alam.  In addition, Swain has had no legal training, and received no legal opinion in advance of the signing of the Specific Guaranty as to its validity or lack thereof.  Therefore, Swain could not have known that the Specific Guaranty was not valid when, at best from Alam's point of view in the present litigation, its legal effect was unclear.[3]

For the same reasons, Alam, knowing that Swain had no legal training, could not have justifiably relied on any views Swain may have expressed as to the legal enforceability of the Specific Guaranty.

The court holds that Alam's claim regarding the Specific Guaranty is without merit.

---

[3]The court hearing Alam's suit against Milburn had ruled that parole evidence would not be admissible to construe the Specific Guaranty.  Based exclusively on the "four corners" of the Specific Guaranty, and for the reasons mentioned above, if the issue as to the enforceability of the Specific Guaranty had been before this court, this court would have ruled that, notwithstanding Milburn's disclaimer of liability, the Specific Guaranty was an enforceable guaranty by Milburn of Swain's debt to Alam.

Decision 6

## 2. General Contractor

Alam contends that Swain misrepresented to her that he was a general contractor, when in fact, he was licensed only as a flooring contractor, and that she would not have extended credit to Swain had she known the actual facts. This argument is not well grounded.

First, Alam admitted at trial that Swain never once misrepresented to her that he was a general contractor. Rather, he told her, truthfully, that he was a contractor. The weight of the evidence showed that Alam assumed Swain was a general contractor because of the general contractor type work he was doing at Jawadia's home.

Secondly, Alam failed to establish that she extended Swain any credit in justifiable reliance on any misrepresentations by Swain concerning his professional license. Even if Swain had falsely represented to Alam that he was licensed as a general contractor, Alam failed to explain why Swain being a general contractor, rather than just a contractor, would have been a material factor in her decision to extend credit. This is especially true because Alam knew at all times during the period she was lending money to Swain that he was, in fact, unable to repay her anything.

Moreover, Alam admitted that by December 9, 2003, when Milburn signed the Specific Guaranty, she had given up all hope of being repaid by Swain, and that she was extending Swain credit in exclusive reliance on the Specific Guaranty.

In short, the weight of the evidence showed that Alam extended credit to Swain, initially, based on their close personal

Decision 7

relationship, and after December 9, 2003, based on the Specific Guaranty. The court therefore holds that Alam did not extend any credit to Swain in justifiable reliance on any misrepresentations by Swain.

    C. <u>Conclusion</u>

For the foregoing reasons, the court will enter judgment in favor of Swain.

**END OF ORDER**

COURT SERVICE LIST

ALL RECIPIENTS

Decision 9